UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMY S.,

                              Plaintiff,

           v.

FRANK J. BISIGNANO,[1] Commissioner of
Social Security,

                              Defendant.
_____

**DECISION
and
ORDER**

**24-CV-6075LGF**
(**consent**)

APPEARANCES:         KONOSKI & PARTNERS, P.C.
                          Attorneys for Plaintiff
                          BRYAN MATTHEW KONOSKI, of Counsel
                          180 Tices Lane
                          Suite 204, Bldg. A
                          East Brunswick, New Jersey  08816

                          MICHAEL DiGIACOMO
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                                and
                          ANDREEA LAURA LECHLEITNER, and
                          SIXTINE FERNANDEZ
                          Special Assistant United States Attorneys, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          6401 Security Boulevard
                          Baltimore, Maryland  21235

## JURISDICTION

On October 2, 2025, the parties to this action, consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 14).  The matter is presently before the

---

[1] Frank J. Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

court on motions for judgment on the pleadings filed by Plaintiff on April 17, 2024 (Dkt. No. 8),[2] and by Defendant on July 1, 2024 (Dkt. No. 12).

## BACKGROUND

Plaintiff Amy S. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and § 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA"), on September 27, 2021, for Social Security Disability Insurance Benefits under Title II of the Act ("DIB"), and Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  AR at 345-68.[3]  Plaintiff initially alleged she became disabled on November 17, 2020 ("disability onset date" or "DOD"), based on a hip problem, post-traumatic stress disorder ("PTSD"), anxiety disorder, a knee problem, a hand/wrist/arm problem, a shoulder problem, immune thrombocytopenia purpura (autoimmune bleeding disorder causing broken capillaries presenting as flat, tiny red or brown spots on the skin), migraines, asthma, and allergies.  AR at 345, 384, 387.  Plaintiff later amended her DOD to September 27, 2021.  AR at 32, 57, 63.[4]  Plaintiff's applications initially were denied January 7, 2022, AR at 92-129, and upon reconsideration on February 9, 2022.

---

[2] Plaintiff did not file a separate motion document, but only Plaintiff's Brief (Dkt. 8) in support of such a motion.

[3] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed in by Defendant on March 19, 2024 (Dkt. 6).

[4] Although Plaintiff last worked on November 17, 2020, because she then collected unemployment insurance through September 2021, during which time Plaintiff certified she was ready, willing, and able to work, Plaintiff amended her DOD to September 27, 2021, which is also the date she applied for disability benefits.  AR at 57.

AR at 130-69.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ"), AR at 227-28, and on June 17, 2022, an administrative hearing was held via telephone before ALJ Robyn L. Hoffman ("the ALJ") ("administrative hearing"), located in Syracuse, New York.  AR at 51-88.  Appearing and testifying by telephone at the administrative hearing were Plaintiff, represented by Lauren Moss, Esq. ("Moss").  A vocational expert ("VE"), one Steven Sachs ("the VE"), was available, but because during the hearing Moss advised that there was outstanding evidence, the ALJ declined to have the VE testify.  AR at 32.  The outstanding evidence was subsequently submitted and admitted into the evidence.  *Id.*

On December 2, 2022, the ALJ issued a decision denying Plaintiff's claim ("the ALJ's Decision"), AR at 29-50, which Plaintiff appealed to the Appeals Council.  AR at 198.  On November 8, 2023, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's final decision at that time.  AR at 4-10.  On February 5, 2024, Plaintiff commenced this action seeking judicial review of the ALJ's Decision.[5]

On April 17, 2024, Plaintiff filed "Plaintiff's Brief" (Dkt. 8) which the court treats as both a motion for judgment on the pleadings ("Plaintiffs' Motion"), and as a memorandum of law in support of Plaintiff's motion ("Plaintiff's Memorandum").  On July 1, 2024, Defendant filed a motion for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching Commissioner's Brief in Support of His Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 (Dkt. 12-

---

[5] Plaintiff requested, and was granted, a thirty-day extension of time to commence this action.  AR at 1-3, 89-91.

1) ("Defendant's Memorandum").  On July 17, 2024, Plaintiff filed Plaintiff's Reply Brief (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED, Defendant's Motion is GRANTED and the Clerk of the Court is DIRECTED to CLOSE the file.

## FACTS[6]

Plaintiff Amy S. ("Plaintiff"), born on May 17, 1984, was 37 years old as of her alleged amended DOD of September 27, 2021, and 38 years old as of December 7, 2022, the date of the ALJ's decision.  AR at 44, 53, 63, 350.  Plaintiff attended school in special education classes until the 11th grade, and completed two years of college, obtaining an associate's degree in medical administrative assistant, and obtained a certificate in food safety.  AR at 84, 388.  When applying for disability benefits, Plaintiff lived in a room in her mother's house, AR at 78, 363, but as of the administrative hearing, Plaintiff lived with her fiancé and her daughter in a camper on property owned by her mother.  AR at 62.  Plaintiff has a driver's license, but stopped driving in November 2021 because intermittent numbness in her leg interferes with Plaintiff's ability to operate the accelerator and brake pedals.  AR at 83, 402.  Plaintiff's past relevant work ("PRW") includes employment as an assistant manager at a convenience store, a crew member in a restaurant, and a floor associate/cashier in a retail store.  AR at 389-473.

---

[6] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

It is undisputed that Plaintiff suffers from degenerative disc disease of the lumbar spine and morbid obesity.  Plaintiff attributes her back impairment to a fall in August of 2019.  AR at 62, 699, 947.  Plaintiff receives primary care at Rochester Medical Group Wolcott Internal Medicine and Medical Center ("Wolcott Medical Center") where her care team includes Daniel J. Koretz, M.D. ("Dr. Koretz"), and Physician's Assistant ("PA") Richard M. Acome ("PA Acome").  AR at 580-830,  744-851, 1120-57, 1170-1203.  On November 8, 2020, Plaintiff commenced treatment for pain management at New York Spine and Wellness Center ("Spine & Wellness") where she saw Raymond Alcuri, M.D. ("Dr. Alcuri"), Ryan McConn, M.D. ("Dr. McConn"), and nurse practitioner ("NP") Katherine Halleck ("NP Halleck").  AR at 831-35, 1050-58, 1159-66, 1206-13, 1216-1224.  On September 1, 2021, Plaintiff, upon referral from Wolcott Medical Center, was examined at Syracuse Orthopedic Specialists, PC ("Syracuse Orthopedics") for low back pain.  AR at 836-37.  On September 22, 2021, Plaintiff was seen at the Auburn Community Hospital Pain Clinic ("Auburn Pain Clinic") where she was examined by Parikshith Sumathi, M.D. ("Dr. Sumathi").  AR at 831-34.  Upon PA Acome's referral, Plaintiff attended physical therapy ("PT") at Carey & Daley – Wolcott from October 5, 2021 to December 6, 2021.  AR at 852-65, 958-75.

Plaintiff underwent diagnostic imaging testing for her back impairment that consistently showed Plaintiff with mild degenerative disc disease of the lumbar spine. These tests include a September 19, 2019 MRI of Plaintiff's lumbar spine taken after the fall which Plaintiff maintains precipitated her back impairment, AR at 588, 699, 947, a November 9, 2020 lumbar spine MRI, *id*. at 1050, a May 16, 2022 MRI of Plaintiff's lumbar spine, *id*. at 1159-60, and June 8, 2022, electro-diagnostic studies, including

EMG (electromyography test to evaluate nerves and muscles) and nerve conduction testing.  *Id*. at 1206.

In connection with her disability benefits application, on November 23, 2021, Plaintiff underwent an internal medicine examination by consultative physician Harbinder Toor, M.D. ("Dr. Toor"), who remarked that Plaintiff was using a walker that was prescribed by a physician, and that the walker was medically needed for standing and walking.  AR at 948.  After examining Plaintiff, Dr. Toor's medical source statement ("Dr. Toor's opinion") included that Plaintiff has moderate to marked limitations for standing, walking, squatting, bending, lifting and carrying, moderate limitations to sitting for a long time, moderate limitations reaching, pushing, and pulling with the right shoulder, pain can interfere with Plaintiff's routine, and Plaintiff should avoid irritants and other factors that can precipitate asthma.  AR at 949-50.  Plaintiff's medical records were reviewed on January 6, 2022, at the initial determination level by State agency medical consultant J. Randall, M.D. ("Dr. Randall"), who found Plaintiff not disabled (AR at 120-26), and on February 8, 2022, at the reconsideration level by S. Putcha, M.D. ("Dr. Putcha"), who also found Plaintiff not disabled.  (AR at 136-48).

## DISCUSSION

## 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20

8

C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant

work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains

capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is

unable to perform PRW relevant work, the Commissioner, at the fifth step, must

consider whether, given the applicant's age, education, and past work experience, the

applicant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The burden of proof is on the applicant for the first four steps, with the Commissioner

bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and

416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need

not be addressed because if the claimant fails to meet the criteria at either of the first

two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if

the claimant meets the criteria for the third or fourth step, the inquiry ceases with the

claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff meets the Act's insured status

requirements for DIB through December 31, 2025, AR at 35, and has not engaged in

substantial gainful employment ("SGA"), since September 27, 2021, the amended DOD

and application date.  *Id*.  The ALJ found Plaintiff has the severe impairments of

degenerative disc disease of the lumbar spine and morbid obesity, *id*., and non-severe

impairments of asthma, and gastroesophageal reflux disease ("GERD"), as well as

medically determinable but non-severe mental impairments of anxiety, post-traumatic

stress disorder ("PTSD"), and panic attacks, *id*. at 35-37, but considering all of Plaintiff's

severe and non-severe impairments, that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1. *Id.* at 37. The ALJ further determined Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a),[8] with limitations including that she can occasionally lift and carry ten pounds, frequently lift/carry less than ten pounds, sit for six hours, stand and/or walk for two hours, all in an eight-hour workday with normal breaks, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and is limited to performing work that needs little or no judgment to do simple duties that may be learned on the job in a short period of time. *Id.* at 37-42. Plaintiff is unable to perform her PRW, but given her age, education, and RFC, with transferability of skills irrelevant to the disability determination, Plaintiff's RFC permits Plaintiff to perform the full range of sedentary work. AR at 43. Accordingly, the ALJ found Plaintiff not disabled as defined in the Act from September 27, 2021, the date the applications were filed, through December 7, 2022, the date of the ALJ's decision. *Id.* at 34.[9]

---

[8] Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

[9] Because the ALJ found Plaintiff capable of performing a full range of sedentary work, the ALJ was not required to obtain testimony from a VE regarding what jobs Plaintiff can perform. *See Taylor v. Barnhart*, 83 Fed.Appx. 347, 350 (2d Cir. 2003) (testimony from a vocational expert is required only when non-exertional limitations "'so narrow[ ] [the claimant's] possible range of work as to deprive [her] of a meaningful employment opportunity.'" (quoting Bapp, 802 F.2d at 605-06) (brackets in *Taylor*).

3.    **Analysis of Plaintiff's Arguments**

In support of her motion, Plaintiff argues that the ALJ committed legal error by failing to find Plaintiff's walker was a medical necessity, Plaintiff's Memorandum at 8-18, and also failing to consider whether Plaintiff's need for a walker to effectively ambulate met the requirements for a listed impairment, specifically, Listing § 1.15 pertaining to disorders of the skeletal spine resulting in compromise of a nerve root.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.15 ("Listing § 1.15").  *Id.* at 18-20.  Defendant argues that substantial evidence in the record supports both the ALJ's finding that Plaintiff's walker was not a medical necessity, Defendant's Memorandum at 5-13, as well as the ALJ's determination that Plaintiff's back impairment did not meet or equal a listed impairment.  *Id.* at 13-17.  In reply, Plaintiff argues the ALJ failed to properly evaluate the medical necessity of Plaintiff's walker, Plaintiff's Reply at 1-4, and whether Plaintiff's use of the walker established Plaintiff's back impairment meets the criteria for Listing § 1.15.

Preliminarily, whether Plaintiff's use of the walker is a medical necessity is significant for two reasons.  First, if the walker is a medical necessity, then the ALJ was required to incorporate its use into the RFC assessment and consult with a vocational expert to determine whether such use would significantly erode the number of sedentary jobs Plaintiff could work.  *See Charles F. v. Comm'r of Soc. Sec.*, 2021 WL 963585, at *4 (W.D.N.Y. 2021) ("[W]hen there is medical documentation about [an assistive device] in the record, an ALJ's failure to determine whether [that device] is medically necessary or to incorporate the use of [that device] into the RFC is legal error.").  Second, requiring use of a walker to effectively ambulate could establish that

Plaintiff meets the criteria for disability based on a listed impairment, particularly Listing § 1.15.

In arguing Plaintiff's walker was a medical necessity, Plaintiff points to statements by three separate medical professionals that Plaintiff requires a walker including Dr. Putcha, Dr. Toor, and Plaintiff's pain management provider, as well as Plaintiff's own asserted need for the walker to prevent her from falling.  Plaintiff's Memorandum at 5-15.  In particular, Plaintiff argues that upon examination by consultative physician Dr. Toor, Plaintiff was found with an abnormal gait, limping to the right side, and unable to stand for more than five minutes without a walker, with Dr. Toor concluding that Plaintiff "needs the walker medically for standing and walking." *Id*. at 10 (citing AR at 948).  Dr. Putcha also found Plaintiff needed a walker, *id*. (citing AR at 145), and as of September 22, 2021, Plaintiff's Wolcott Medical Center notes indicate that Plaintiff's "Provider at Pain Management recommended a walker, *id*. (citing AR at 586), a recommendation that was reiterated by NP Halleck on July 20, 2022 when Plaintiff was "encouraged to use necessary assistive devices including walker [as a] fall precaution."  *Id*. (citing AR at 1223).

In contrast, Defendant argues the ALJ properly relied on the entire administrative record in determining the walker was not a medical necessity for Plaintiff including treatment notes from Wolcott Medical Center, Plaintiff's primary care provider, where Dr. Koretz's physical examinations of Plaintiff were remarkable only for morbid obesity, lumbar spine tenderness, and positive straight leg raise testing on the right, for which follow up with pain management was recommended, Defendant's Memorandum at 6-7, and PA Acome who refused to prescribe a walker for Plaintiff, AR at 586, Defendant's

Memorandum at 5-6, and examination at the Auburn Pain Clinic by Dr. Sumathi who also reviewed Plaintiffs' MRI results and recommended "conservative management with [physical therapy] and core strength, *id*. at 6, and that Plaintiff maintain an ideal body weight. *Id*. Defendant also maintains that most of the references in the administrative record to Plaintiff's use of a walker are mere observations, rather than an actual recommendation that Plaintiff use such assistive device, *id*. at 8-12, and that because sedentary work primarily requires sitting, even if Plaintiff's use of the walker is a medical necessity, such use is not inconsistent with an RFC for sedentary work. Here, careful review of the administrative record demonstrates that Plaintiff has not established that her use of a walker is a medical necessity.

Pursuant to SSR 96-9p,[10] the use of a hand-held assistive device to effectively ambulate, in some instances, may significantly erode the occupational base for individuals who must use such devices. SSR 96-9p, *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, 1996 WL 374185, at *7 (July 2, 1996) (providing policies for assessing an individual's ability to do work when he or she has been assessed with an RFC for less than the full range of sedentary work). Where the record suggests that a plaintiff requires the use of an assistive device to stand or walk, the ALJ should determine whether the device is "medically required." *Id. See Charles F.*, 2021 WL 963585, at *4. "Plaintiff bears the burden to establish medical necessity." *Vanever v. Berryhill*, 2018 WL 4266058, *2 (Sept. 6, 2018 W.D.N.Y. 2018). For a device to be

---

[10] "SSR" is an acronym for "Social Security Ruling." Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

considered "medically required," there must be "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing."  SSR 96-9p, 1996 WL 374185 at *7.  Additionally, the documentation must describe "the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  *Id*.  If "medical need for an assistive device has been established, the ALJ must incorporate that device into the RFC."  *Vanever v. Berryhill*, 2018 WL 4266058 at *2.  *See also* SSR 96-9p (where there is a medically-required hand-held device, consultation of a vocational resource may be "especially helpful" in determining if/how the assistive device impacts a claimant's ability to work).  "Although SSR 96-9p does not mandate that the hand-held assistive device be prescribed to be considered medically necessary, it does require specific medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances surrounding its need."  *Hoke v. Colvin*, 2015 WL 3901807, at * 14 (N.D.N.Y. June 25, 2015) (citing SSR 96-9p, 1996 WL 374185, at * 7).  Moderate limitations in walking and standing, an unsteady gait, and mere observation by a medical provider that a plaintiff used an assistive device are not medical evidence establishing use of an assistive device to effectively ambulate is medically necessary as § 96-9p requires.  *Id*.  Here, Plaintiff has not met her burden of establishing her use of a walker to ambulate is medically necessary because the evidence on which Plaintiff relies does not satisfy the requirements of SSR 96-9p.

First, insofar as Dr. Toor reported on November 23, 2021, that Plaintiff "is using a walker prescribed by a physician," AR at 948, not only does Dr. Toor not describe the circumstances in which Plaintiff needs the walker, but the record is devoid of any

evidence that any medical provider prescribed a walker for Plaintiff's use; rather, the evidence in the record shows notes regarding a "telephone encounter" at 1:37 P.M. on September 22, 2021, when Plaintiff called Wolcott Medical Center and reported "Provider at Pain Management recommended a <u>walker</u>, but can't afford one.  Can she [Plaintiff] get a script for this?"  AR at 586 (underlining in original).  Subsequent telephone encounter notes show PA Acome requesting to see Plaintiff's Pain Management note to review the request for a walker, *id*., and on September 24, 2021, PA Acome responded that upon reviewing the Pain Management note, he "did not see any mention of getting her [Plaintiff] a <u>walker</u>, the[y] said she should go to physical <u>therapy</u> and work on core strengthening."  *Id*. (underlining in original).  Nor is there any explanation in the administrative record as to why, if Pain Management recommended a walker, Pain Management did not provide Plaintiff with a prescription for a walker.

Although the "Provider at Pain Management" mentioned in the telephone encounters is not further identified, Defendant construes, and Plaintiff does not dispute, the reference is to Dr. Sumathi at Auburn Pain Clinic by whom Plaintiff was initially evaluated for her back pain at 11:12 A.M. the morning of September 22, 2021.  Defendant's Memorandum at 6 (citing AR at 831-35).  Significantly, a thorough review of the treatment notes from Plaintiff's initial visit at the Auburn Pain Clinic, including Dr. Sumathi's examination and assessment, reveals no mention of Plaintiff obtaining a walker; rather, Dr. Sumathi recommended Plaintiff conservative treatment including physical therapy, core strengthening, a home exercise program, other-the-counter pain medications, and maintaining an ideal body weight.  AR at 831-35.  At the administrative hearing, Plaintiff testified that her physical therapist recommended a cane, but Plaintiff's

physician refused the request, so Plaintiff purchased the cane on her own.[11]  AR at 69-70.  Plaintiff further testified that after purchasing the cane, her back got worse so in September 2021, Plaintiff asked her doctor if she could obtain a walker through insurance, but her doctor told her it was not medically necessary.  AR at 70.  Plaintiff eventually purchased a walker on her own.[12]  *Id*.  Accordingly, Plaintiff's statement to Dr. Toor that she was using a walker that was prescribed for her thus is not supported by the record.

With regard to the February 7, 2022 assessment at the reconsideration level of administrative review by State agency review physician Dr. Putcha that Plaintiff "has difficulty with walking long distances, thus, walker needed," AR at 145, not only is Dr. Putcha's assessment that Plaintiff needs the walker to walk long distances not supported by the documents Dr. Putcha reviewed, but Dr. Putcha's complete assessment establishes that this determination is based on Dr. Toor's November 23, 2021 consultative examination.  AR at 144-45.  Because, as discussed above, Discussion, *supra*, at 14-15, Dr. Toor's statement that Plaintiff "is using a walker prescribed by a physician" is not supported by the administrative record, it logically follows that Dr. Putcha's reliance on Dr. Toor's assessment is also unsupported by the record.  Moreover, despite assessing Plaintiff as needing a walker, Dr. Putcha found Plaintiff with an RFC for performing sedentary work and, thus, not disabled.  AR at 147.  Relevantly, courts within the Western District of New York have found that the use of an

---

[11] The court is unable to find any support in the administrative record for Plaintiff's testimony that her physical therapist recommended or prescribed a cane.

[12] When Plaintiff purchased the walker on her own is not in the record, but Plaintiff was first observed using the walker at the consultative examination by Dr. Toor on November 23, 2021.  AR at 948.

assistive device, including a cane or walker, for "aid in ambulation is not inconsistent with an RFC for sedentary work." *Stower v. Saul*, 2020 WL 897411, at * 5 (W.D.N.Y. Feb. 25, 2020) (citing *Zeler v. Comm'r of Soc. Sec.*, 2019 WL 210841, at * 3 (W.D.N.Y. Jan. 16, 2019) ("the finding of sedentary work is consistent with the use of a cane for walking that is a minor part of job duties.") (citing 20 C.F.R. § 416.967(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), and *Cortes v. Chater*, 1997 WL 36979, at *4 (E.D.N.Y. Jan. 17, 1997) ("Plaintiff is capable of at least occasional standing and walking, albeit sometimes with the assistance of a cane. Plaintiff testified she was 'not sure' how much weight she could lift or carry, but no medical or other evidence suggests she could not lift light objects.")).

As for Plaintiff's argument that Wolcott Medical Center notes indicate that Plaintiff's "Provider at Pain Management recommended a walker, Plaintiff's Memorandum at 10 (citing AR at 586), Plaintiff again references the telephone encounter between Plaintiff and Wolcott Medical Center which establishes that PA Acome not only did not prescribe a walker for Plaintiff, but also that PA Acome's review of the notes from Pain Management fail to establish that anyone from Pain Management recommended or prescribed a walker. *See* Discussion, *supra*, at 14-15. Plaintiff also asserts that on July 20, 2022, Plaintiff's pain management provider "reiterated" the recommendation for a walker by equivocally stating Plaintiff was "*encouraged* to use necessary assistive devices including walker [as a] fall precaution," Plaintiff's Memorandum at 10 (citing AR at 1223 (italics added)), but this suggestion does not

establish use of the walker was medically required.  Furthermore, the numerous other references in the record that Plaintiff used a walker, *see*, *e.g.*, AR at 971 (physical therapy daily progress notes documenting that on November 29, 2021, Plaintiff was "ambulating with a rolling walker for support"); 986 (PA Acome observing at hypertension check on December 2, 2021 that Plaintiff was "using a rolling walker with brakes); 1188 (PA Acome observing on May 13, 2022 that Plaintiff "[w]alks with walker."), are mere observations that Plaintiff uses a walker and are insufficient to establish Plaintiff's use of a walker is medically required, much less describe the circumstances requiring Plaintiff use a walker.  *See Sandra S. v. Comm'r of Soc. Sec.*, 2022 WL 4368281, at * 4 (W.D.N.Y. Sep. 21, 2022) (citing *Leda I. v. Comm'r of Soc. Sec.*, 545 F.Supp.3d 27, 32 (W.D.N.Y. 2021) ("simply observ[ing]" the plaintiff used an assistive device to ambulate did not establish the assistive device was medically necessary)); *Hoke*, 2015 WL 3901807, at * 14 (citing SSR 96-9p, 1996 WL 374185, at * 7).

The evidence on which Plaintiff relies to satisfy the requirements of SSR 96-9p also conflicts with other evidence in the record, and it is for the ALJ to resolve "[g]enuine conflicts in the medical evidence" of record.  *See Veino v. Barnhart*, 312 F.3d 578. 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve." (citing *Richardson v. Perales,* 402 U.S. 389, 399 (1971)).  Such conflicting evidence includes diagnostic imaging evidence on which the ALJ relied.  In particular, an MRI of Plaintiff's lumbar spine taken November 9, 2020 showed mild degenerative disc disease of the lumbar spine, greatest at L4-L5, with mild right neural foraminal narrowing at L4-L5 from a right foraminal disc protrusion.  AR at 40 (citing AR at 1050).

A May 16, 2022 MRI of Plaintiff's lumbar spine showed mild degenerative changes at L4-L5 with a right foraminal disc protrusion, slightly increased from prior exam, which encroaches on the exiting right L4 nerve root.  Mild to moderate right neural foraminal narrowing, progress, and no left neural foraminal narrowing or spinal canal narrowing.  *Id*. at 41 (citing AR at 1159-60).  On June 8, 2022, electro-diagnostic studies, including EMG and nerve conduction testing, showed normal peroneal nerve (nerve that branches from the sciatic nerve and provides sensation to the front and sides of the legs and the tops of the feet), no evidence of acute right lumbar motor radiculopathy, and all examined muscles showed no evidence of electrical instability.  *Id*. (citing AR at 1206).  This testing is consistent with an MRI of Plaintiff's lumbar spine taken September 19, 2019, shortly after the fall to which Plaintiff attributes her back impairment, which showed L4-L5 diffuse disc building eccentric to the right with a very small right far lateral disc protrusion abutting the exiting right L4 nerve root, mild degenerative disc disease at L4-L5, but no spinal canal or neural foraminal stenosis.  AR at 588.  Although the ALJ did not specifically mention the September 19, 2019 MRI, the ALJ "is not required to specifically discuss every piece of medical evidence in the record."  *Thompson v. Comm'r of Soc. Sec.*, 2018 WL 4103181, at *4 (W.D.N.Y. Aug. 29, 2018) (citing and quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[a]n ALJ does not have to state on record every reason justifying a decision" and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered") (internal quotations omitted in *Thompson*).  *See also Cichocki v. Astrue*, 729 F.3d 172, 178 n. 3 (2d Cir. 2013) ("remand is not required where the 'evidence of record permits us to glean the rationale of an ALJ's decision'" (quoting

*Mongeur v. Heckler*, 722 F.2d 103, 1044 (2d Cir. 1983))); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (remand is not warranted where the court can look to other portions of the ALJ's decision for credible evidence and find the ALJ's determination was supported by substantial evidence). In this case, the ALJ also observed that several treatment providers considered Plaintiff's reported symptoms to be out of proportion to what was seen on diagnostic imaging. *See*, *e.g.*, AR at 40 (citing AR at 1055 (Dr. McConn commenting on March 15, 2022 that Plaintiff's "symptoms seemed somewhat out of proportion to what is seen on MRI").

The ALJ also considered Plaintiff's activities of daily living to be inconsistent with Plaintiff's claims that she is disabled. AR at 41. In particular, the ALJ considered that Plaintiff reports performing daily childcare, feeds and takes care of her dog, cooks, does laundry, mows the lawn, drives, shops, reads, watches television, does bead work, and socializing with friends. *Id*. (citing AR at 400-02, 948, 955). The ALJ specifically stated that his RFC assessment of Plaintiff was based on objective evidence in the record, Plaintiff's course of treatment for her back impairment, Plaintiff's reported activities of daily living, and medical opinions. AR at 42. Although not specifically mentioned by the ALJ, the administrative record also contains evidence that on October 11, 2021, a month after PA Acome declined Plaintiff's request for a prescription for a walker, Plaintiff was observed able to ambulate without much difficulty, AR at 662, and at PT on October 25, 2021, Plaintiff reported the previous weekend, she walked through a mud bog, then rode to Batavia where she walked around for a few hours. *Id*. at 862.

With regard to Plaintiff's argument, Plaintiff's Memorandum at 14-15, that the ALJ improperly "cherry-picked" evidence from the record to support the RFC determination,

and relies on "a single notation" that "Plaintiff's gait was 'intact' to support his finding"

that Plaintiff's use of a walker was not medically necessary, such argument "boils down

to a disagreement with the ALJ's weighing of the evidence, and it is 'not the function of

this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled.'"

*Justin C. v. Comm'r of Soc. Sec.*, 2026 WL 369091, at *6 (W.D.N.Y. Feb. 10, 2026)

(quoting *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292

(W.D.N.Y. 2021) (quoting *Pellam v. Astrue*, 508 Fed.Appx. 87, 91 (2d Cir. 2013) ("We

think that Pellam is, in reality, attempting to characterize her claim that the ALJ's

determination was not supported by substantial evidence as a legal argument in order

to garner a more favorable standard of review."), and citing *Lisa T. v. Kijakazi*, 2022 WL

2207613, at *3 (D. Conn. June 21, 2022) ("an allegation of cherry-picking is seldom

successful because crediting it would require a court to re-weigh record evidence," and

"what a claimant may label as cherry-picking can often be described more neutrally as

weighing the evidence")).  Again, the ALJ "is not required to specifically discuss every

piece of medical evidence in the record."  *Thompson*, 2018 WL 4103181, at *4  (citing

and quoting *Brault*, 683 F.3d at 448).

Because Plaintiff failed to establish that her use of a walker was medically

necessary, the ALJ was not required to incorporate Plaintiff's use of the walker into the

RFC determination.  *See Charles F.*, 2021 WL 963585, at *4 ("[W]hen there is medical

documentation about [an assistive device] in the record, an ALJ's failure to determine

whether [that device] is medically necessary or to incorporate the use of [that device]

into the RFC is legal error.").  Nor is the court required to consider Plaintiff's further

argument, Plaintiff's Memorandum at 18-20, that Plaintiff meets the criteria for disability

based on Listing 1.15 of the SSA's Listing of Impairments, which requires use of an assistive device to effectively ambulate.  20 C.F.R. Part 404, Subpart P, Appx. 1, § 1.15.

Accordingly, on this record, the court finds Plaintiff has failed to meet her burden of proof at to the medical necessity for use of a walker, and the ALJ's decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.


## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    February 26, 2026
          Buffalo, New York